**Russell H. Falconer** (admitted *pro hac vice*)
    E-mail:    russell.falconer@bakerbotts.com
**Melvin M. Wright, Jr.** (admitted *pro hac vice*)
    E-mail:    melvin.wright@bakerbotts.com
**Suzanne M. Hengl** (admitted *pro hac vice*)
    E-mail:    suzanne.hengl@bakerbotts.com
**Paul J. Reilly** (admitted *pro hac vice*)
    E-mail:    paul.reilly@bakerbotts.com
**BAKER BOTTS, L.L.P.**
30 Rockefeller Plaza
New York, NY  10112
Telephone:    (212) 408-2500
Facsimile:    (212) 408-2501

Attorneys for Defendant Wal-Mart Stores, Inc.

(*Counsel names continued on page after signature page*)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **ADIDAS AMERICA, INC. and ADIDAS AG**<br><br>                   Plaintiffs,<br><br>    v.<br><br>**WAL-MART STORES, INC.**,<br><br>                   Defendant. | Civil No. CV 05 1297 BR<br><br>**DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING PLAINTIFFS' CLAIMS WITH RESPECT TO FOOTWEAR BEARING <u>TWO STRIPES</u>** |

Defendant Wal-Mart Stores, Inc. (hereinafter "Wal-Mart"), by its attorneys, respectfully submits this memorandum of law in support of its motion for partial summary judgment dismissing all claims of trademark infringement and willful infringement by Plaintiffs

PAGE 1 -    DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN
             SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

adidas[1] America, Inc. and adidas AG (hereinafter collectively "Plaintiffs" or "adidas") with respect to Wal-Mart footwear bearing <u>two</u> stripes.

Plaintiffs' trademark infringement claim is based upon Wal-Mart's sale of certain models of footwear bearing two and four parallel stripe decorative designs. This motion is limited to the allegations concerning two stripes.

Respectfully, the infringement claim should be dismissed because (1) adidas lacks standing to assert infringement as to two stripes inasmuch as an unrelated third party owns exclusive federal rights to use two parallel stripes as a mark on footwear; (2) adidas admits it has neither used two stripes nor owns proprietary rights to the use of two stripes; and (3) adidas has offered no survey evidence measuring confusion between any Wal-Mart footwear bearing two stripes and adidas's Three-Stripe Mark. Because there is no issue of fact with respect to the foregoing, adidas has failed to establish a material issue of fact concerning trademark infringement as to Wal-Mart's sale of footwear bearing a two stripe decorative design. Therefore, Wal-Mart respectfully requests that this Court grant its motion for partial summary judgment dismissing this claim.

## **ARGUMENT**

**I.    There is No Genuine Issue Of Fact**

    A.    <u>Summary Judgment Standard</u>

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The Court must not weigh the evidence or determine the truth of the matters asserted but only

---

[1] adidas insists on lower-case spelling of its name.

PAGE 2 -    DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN
                SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

determine whether there is a genuine issue for trial." *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

Once the moving party establishes a prima facie case demonstrating the absence of a genuine issue of material fact, the non-moving party has the burden of presenting "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Id*. at 249.

### 1. Undisputed Facts[2]

Here, there are no genuine issues of material fact concerning several elements critical to adidas's claim of trademark infringement based on Wal-Mart's use of two stripe designs. First, a third party, SR Holdings, Inc. ("Stride Rite") owns a federal trademark registration encompassing a two stripe design that is similar to the Wal-Mart two stripe footwear that adidas here alleges constitute trademark infringement by Wal-Mart. (*See* Declaration of Suzanne M. Hengl in Support of Defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment Dismissing Plaintiffs' Claims With Respect to Footwear Bearing Two Stripes ("Hengl Decl." ¶ 3; Ex. 3.) Second, adidas concedes it has never used two stripes on footwear and concedes it owns no proprietary rights therein. (*See id*. ¶ 2; Ex. 2.) Third, adidas has offered no confusion survey evidence testing any Wal-Mart footwear bearing two stripes. (*See id*. ¶¶ 9-10; Exs. 8, 9.) In addition, adidas has admitted that it is unaware of any instance of actual confusion stemming from Wal-Mart's sale of footwear bearing a two stripe decorative pattern, despite the concurrent voluminous use by adidas and Wal-Mart of three and two stripes respectively over a

---

[2] The facts relied on herein are also set forth in Defendant's Concise Statement of Material Facts filed concurrently herewith.

PAGE 3 -   DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

period of years.[3] (*See id*. ¶¶ 2, 8-9; Exs. 1, 7, 8.)  Finally, there is no issue of fact that there is widespread use of two stripe designs in the athletic footwear industry. (*See id*. ¶¶ 15-16; Exs. 14-16.)  As a matter of law, adidas's claim concerning Wal-Mart's sale of footwear bearing two parallel stripes must fail.

      B.      <u>adidas Lacks Standing</u>

In order to prevail on its federal claim of trademark infringement regarding Wal-Mart's two stripe footwear, adidas must show (i) ownership of a valid trademark and (ii) infringement of that mark.  *See Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985).  With respect to ownership, the federal registration of a mark constitutes "prima facie evidence of the validity of the registered mark . . .[a party's] ownership of the mark . . . and exclusive right to use the mark." 15 U.S.C. § 1115(a).  Here, adidas's claim of rights regarding two parallel stripes on footwear is foreclosed as a matter of law.  Stride Rite is the owner of a federal registration (Registration No. 2,076,036) covering two parallel stripes for use in connection with footwear (the "Two-Stripe Mark"). (*See* Hengl Decl. ¶ 3; Ex. 3.)  That registration issued on July 1, 1997 and asserts use of that design since 1995. (*Id*.)  adidas never opposed issuance of that registration by Stride Rite. (*See id*. ¶ 5; Ex. 5.)  Nor has it ever asserted that Stride Rite's Two-Stripe Mark infringes any trademark right of adidas. (*See id*. ¶¶ 5-6; Exs. 5, 6.)  Stride Rite, as the owner of this registration, is entitled to the presumptions of exclusivity, validity and ownership described above just as surely as any owner of a federal registration, and this Court can take judicial notice of this federal document.

The Lanham Act provides that an action for trademark infringement may only be brought by the registrant or its legal representative, predecessor, successor or assignee. *See* 15 U.S.C. § 1114, 1127; *DEP Corp. v. Interstate Cigar Co., Inc*., 622 F.2d 621, 622-23 (2d Cir. 1980).  Here, adidas is neither the registrant of the Two-Stripe Mark nor its legal representative.

---

[3]    adidas also admits such lack of actual confusion with regard to Wal-Mart's four stripe designs.  Four stripe designs are the subject of a separate motion by Wal-Mart.

PAGE 4 -   DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Therefore adidas has no standing to sue Wal-Mart in connection with Wal-Mart's use of two stripes on footwear. The only trademark adidas owns in respect of stripes is the Three-Stripe Mark. adidas admits it does not use a two stripe design or own a registration for two stripes. (*See* Hengl Decl. ¶ 2; Ex. 2.) Because Stride Rite is the rightful owner of the Two-Stripe Mark, adidas's claim of trademark infringement as to Wal-Mart's sale of footwear bearing two stripe designs must fail. adidas has no legal standing to enforce trademark rights that it not only does not own but are owned by an unrelated third party. Stride Rite's Two Stripe Mark and adidas's Three-Stripe Mark have coexisted for well over a decade, during which time adidas has never disputed Stride Rite's ownership of that registration.[4] Nor has adidas ever asserted that the Two Stripe Mark was confusingly similar to the Three-Stripe Mark despite over ten years of concurrent use.

In short, the Stride Rite registration effectively limits the scope of protection for the adidas Three-Stripe Mark. A cursory review reveals that the Wal-Mart two stripe designs are closer in appearance to the Stride Rite mark than to the adidas mark. In the circumstances, there is simply no legal or factual predicate for adidas to prevent Wal-Mart from continuing such use. As a matter of law (and common sense) adidas cannot prohibit Wal-Mart from selling footwear bearing two stripe designs when, in fact, trademark rights in the Two-Stripe Mark belong to an independent third party.

Even if adidas could somehow establish that it had a basis to assert rights in a two stripe design, it must also demonstrate that Wal-Mart has used stripes to indicate source. However, Wal-Mart uses stripes in an ornamental fashion, which constitutes a classic fair use. *See* 15 U.S.C. 1115(b)(4). adidas has put forth no evidence showing that Wal-Mart advertises or

---

[4] In April of this year, in the midst of the trial of a separate case, adidas filed an administrative proceeding seeking cancellation of the Stride Rite Registration. In that action, adidas does not claim two and three stripes are confusingly similar; it merely alleges that Stride Rite abandoned its mark and misrepresented the duration of its use. (*See* Hengl Decl. ¶ 6; Ex. 6.) That proceeding is in its infancy. The Stride Rite Registration remains valid and subsisting.

PAGE 5 -   DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN
            SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

promotes its footwear using any of its stripe designs in such a way as to cause consumer confusion or deception. (*See* Hengl Decl. ¶ 11; Ex. 10.) Further, adidas has not shown that Wal-Mart ever claimed trademark rights or ever obtained or sought to obtain federal registration for any mark using parallel stripes in connection with footwear. (*See id*.) There is no dispute on these points.

Because adidas lacks standing to bring suit against Wal-Mart for trademark infringement based on Wal-Mart's sale of footwear bearing two stripes, an infringement analysis with respect to adidas's claim of infringement should be unnecessary.[5] However, for the Court's convenience, an analysis of the relevant considerations in assessing a claim of trademark infringement is included below.

  C.  There is a No Likelihood of Confusion Between adidas's Three Stripe Mark and Wal-Mart's Use of a Two Stripe Design

The touchstone for evaluating infringement in the Ninth Circuit is whether "a reasonably prudent customer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks" due to the similarities between the two marks. *Dreamworks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Likelihood of confusion is evaluated according to the eight factor test set forth by this Circuit in *AMF Inv. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), namely: (1) similarity of the marks; (2) relatedness of the goods; (3) similarity of the channels of trade; (4) strength of the plaintiff's mark; (5) defendant's intent; (6) evidence of actual confusion; (7) degree of care exercised by the average purchaser; and (8) the likelihood of expansion into other markets.

    **1.**  **Strength of the Mark**

A mark's strength is measured by its distinctiveness, *see Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1988), and the degree to which it indicates the source or origin of the product to consumers, *see GoTo.com Inc. v. Walt Disney*

---

[5] Absent an ability to show trademark infringement there can be no willful infringement.

PAGE 6 - DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

*Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). While Wal-Mart does not dispute that adidas's Three-Stripe Mark has acquired distinctiveness and that three of adidas's registrations covering the Three-Stripe Mark for use on footwear are incontestable under the Lanham Act, it is also true that adidas's Three-Stripe Mark is only one among a "crowded field" of marks including stripe designs in the footwear industry. (*See* Hengl Decl. ¶¶ 15-16; Exs. 14, 15, 16.) As such, adidas's ability to limit the use of stripe designs by others in the industry is severely circumscribed. *See Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 634 n.1 (9th Cir. 2007) (where a crowded field of similar marks for use on similar goods exists, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd); *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) (same) (citation omitted); *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1224 (C.D. Cal. 2004) (same); *Jupiter Hosting, Inc. v. Jupitermedia Corp.*, 76 U.S.P.Q.2d 1042, 1045-46 (N.D. Cal. 2004) (same).

In fact, as the Trademark Trial and Appeal Board has recognized time and again, "it is a common practice among manufacturers of athletic or sport shoes to apply stripes [sic] strip, or bar designs to the sides of their shoes as a decorative or ornamental feature thereof."[6] *In re Chung, Jeanne & Kim Co.*, 226 U.S.P.Q. 938, 941 (T.T.A.B. 1985) (collecting cases). Because of the widespread use of stripes on athletic footwear, manufacturers using stripe designs as trademarks are entitled to only a very limited scope of protection. The Board has cogently summed up the effect of the widespread use of stripes in the athletic shoe industry as follows:

> [T]here can be little doubt concerning the fact that it is the common practice among the manufacturers of athletic shoes to place various [s]tripe and bar designs on the sides of their respective shoes as a means of indicating source of such product and/or as a decorative feature thereof. However, this complete saturation of the market with somewhat similar stripe and bar designs leaves

---

[6] Ornamental designs are not registrable in the U.S. Patent and Trademark Office. See 15 U.S.C. § 1052; TMEP § 1202.03 et seq. adidas's applications to register its Three-Stripe Mark on footwear have been rejected as "ornamental" and adidas never contested that such designs are in fact ornamental. Only by asserting acquired distinctiveness has adidas obtained registrations. (*See* Hengl Decl. ¶¶ 13-14, Exs. 12, 13.)

PAGE 7 -   DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

> applicant, registrant, and all other manufacturers of athletic shoes engaging in such practice with marks that are extremely weak and certainly entitled to only a very narrow and limited scope of protection as contended by applicant. This means that competitors in this field may come closer to such weak marks without violating the owner's rights therein than would be the case with a stronger mark.

*In re The Lucky Co.*, 209 U.S.P.Q. 422, 423 (T.T.A.B. 1980); *see Puma-Sportschuhfabriken Rudolf Dassler KG v Superga S.p.A.*, 204 U.S.P.Q. 688, 691 (T.T.A.B. 1979) (same); *see also Puma-Sportschuhfabriken Rudolf Dassler KG v. Roller Derby Skate Corp.*, 206 U.S.P.Q. 255, 258 (T.T.A.B. 1980) (Recognizing that numerous manufacturers of athletic shoes apply stripes to the sides of their footwear as decorative or ornamental designs. Indeed, the PTO has issued a registration for two parallel stripes, effectively limiting as a matter of law adidas's ability to prevent the use of two stripes by others).

Further, adidas is foreclosed from asserting its Three-Stripe Mark against Wal-Mart's use of two stripes. Stride Rite's registration drastically narrows the scope of protection for adidas's mark. adidas acquiesced in this narrowing by its failure to challenge Stride Rite's acquisition of that registration and its failure to challenge Stride Rite's use of that design, notwithstanding that such use dates back to 1995. To this day, adidas has never asserted that Stride Rite's use has caused confusion. That adidas decided in the last few weeks to challenge that registration does not in any way negate the presumptions of validity, use or exclusivity as to Stride Rite's mark. Because the Wal-Mart footwear at issue bearing two stripe designs falls outside any proprietary claim that adidas might have, this factor favors Wal-Mart.

### 2. Relatedness of the Products

The "relatedness of the products" inquiry concerns whether and to what extent the two products compete with each other. As this Circuit has recognized, "[r]elated goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999). Here, there is no dispute that Wal-Mart and Stride Rite (not to mention numerous

third parties) have both sold footwear bearing two stripes for a number of years. (*See* Hengl Decl. ¶¶ 3, 8, 15, 16; Exs. 3, 7, 14, 15, 16.) During that period, adidas has sold footwear bearing three stripes. (*See id.* ¶ 2; Ex. 1.) Yet there has been no report by adidas or Wal-Mart of confusion. There is no dispute that Wal-Mart and adidas offer goods at completely opposite ends of the athletic footwear price spectrum. adidas professes to be the shoe for the serious athlete, and sets its shoes at premium price points ranging generally from $50 to $350. (*See id.* ¶ 20; Ex. 19.) In contrast, Wal-Mart is targets consumers looking to purchase quality footwear at affordable prices for casual wear or recreational athletic use. Accordingly, Wal-Mart prices its footwear at around $10. (*See id.* ¶ 21; Ex. 20.) Because adidas and Wal-Mart attract different segments of the consumer market, their products are not in direct competition with each other. In fact, Wal-Mart footwear is only sold at Wal-Mart and adidas footwear is not available at Wal-Mart. (*See id.* ¶ 22; Ex. 21.) Therefore, this factor favors Wal-Mart.

### 3.     Similarity of the Marks

Similarity of the marks is evaluated "on three levels: sight, sound and meaning." *Sleekcraft Boats* 599 F.2d at 351. However, because adidas's mark is a design mark, and the ornamental stripes used by Wal-Mart are obviously visual in nature, adidas's Three-Stripe Mark and Wal-Mart's two stripe designs are easier to compare visually. Such comparison reveals that adidas's Three-Stripe Mark consists of three parallel equidistant stripes, equal in width and extending diagonally from the laces to the sole. (*See* Hengl Decl. ¶ 2; Ex. 1.) In contrast, Wal-Mart's two stripe designs vary in presentation. Because Wal-Mart uses stripes strictly in an ornamental fashion, and not as a trademark, its presentation of stripes varies greatly from one shoe style to the next. For example, while the designs typically consist of two parallel stripes extending diagonally from the laces to the sole, the stripes may or may not be of equal width and spacing, come in varying degrees of thickness, and many of the stripes include design elements on the stripe itself, e.g., rhinestones, cut-outs, etc. (*See id.* ¶ 12; Ex. 11.) As the leading

commentator on trademark law has noted, the widespread use of similar stripe designs in the footwear market has so narrowed the scope of protection afforded to each mark that any such stripe design is "limited substantially to that identical design." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §11:85 (4th ed. 2008).  Because the athletic footwear industry is heavily populated with stripe designs, Wal-Mart's ornamental use of two stripes is obviously more similar to Stride Rite's stripe design than to adidas's Three-Stripe Mark.  Wal-Mart's two stripe designs are clearly distinguishable from adidas's Three-Stripe Mark and do not constitute a "confusingly similar imitation" of the adidas stripes, the precise allegation made by Plaintiffs in the Complaint.  Two stripes can no more be said to imitate three stripes than a one dollar bill imitates a two dollar bill.

### 4. Evidence of Actual Confusion

The next factor in determining likelihood of confusion is whether there have been any instances of "actual confusion."  As this Circuit has recognized, "evidence of actual confusion is strong evidence that future confusion is likely. . . ." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1150 (9th Cir. 2002) (quotation omitted).  In this case, where adidas and Wal-Mart have been selling striped footwear simultaneously in the marketplace for years, (*see* Hengl Decl. ¶¶ 2, 8; Exs. 1, 7), and where sales in the past five years alone have exceeded hundreds of millions of dollars, the lack of even a single instance of actual confusion is strong evidence that there is no likelihood of confusion. *See Brookfield Commc'ns, Inc.* ("We cannot think of more persuasive evidence that there is no *likelihood* of confusion between these two marks than the fact that they have been simultaneously used for five years without causing any consumers to be confused as to who makes what.") (emphasis in original); *see also Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1361 (7th Cir. 1995) ("[Defendant] sold several hundred thousand of the allegedly infringing brooms, yet there is no evidence that any consumer ever made such an error; if confusion were likely, one would expect at least one person out of this

PAGE 10 -  DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN
        SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

vast multitude to be confused. . . ."). Here, the utter absence of any evidence of actual confusion supports the inference that future confusion is unlikely.

Indeed, adidas does not dispute the absence of actual confusion. While adidas may argue correctly that it need not prove actual confusion in order to establish that there is a likelihood of confusion, adidas has not simply stated that it cannot prove actual confusion. To the contrary, it has admitted that "it is not aware of any instances of actual confusion." (*See* Hengl Decl. ¶ 9; Ex. 8.) As this Circuit has recognized, the difference between an inability to prove actual confusion and the acknowledgement that there has been none "is a crucial difference." *Brookfield Commc'ns*, 174 F.3d at 1050.

Finally, while adidas has offered survey evidence from Dr. Gerald Ford in support of its allegations, Dr. Ford never conducted a survey with respect to any of the two striped Wal-Mart footwear accused in this litigation.[7] He did not test a single model of Wal-Mart footwear bearing two stripes. (*See* Hengl Decl. ¶ 10, Ex. 9.) Because adidas has failed to produce even a scintilla of evidence showing actual confusion as to Wal-Mart's two stripe designs, this factor favors Wal-Mart.

### 5. Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft* 599 F.2d at 352. Here, Wal-Mart is not competing with adidas for the same consumers. Indeed, time and again corporate representatives from both adidas and Wal-Mart confirmed that the parties are not competitors. (*See* Hengl Decl. ¶¶ 18-19; Exs. 17, 18.) The parties sell their products through different channels of trade and market their goods differently. Specifically, adidas sell its footwear through a variety of retail channels including mall stores, sporting goods

---

[7] adidas intends to rely on a survey conducted by Dr. Ford in connection with a trademark litigation adidas brought against Steve Madden in 2002. In that litigation, two styles of shoes manufactured by Steve Madden bearing two stripes were at issue. Any reliance on that data is misplaced. The Madden survey did not study any Wal-Mart shoe bearing two stripes. That alone is fatal. Moreover, it was conduced nearly six years ago. Dr. Ford has acknowledged that there may come a point in time when findings become dated. (*See* Hengl Decl. ¶ 10, Ex. 9.) Such is certainly the case here, where new shoe styles are rolled out each season, changing the landscape of the marketplace and consumer perception accordingly.

PAGE 11 -   DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN
              SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

stores, independent stores, and department stores.  No adidas footwear is sold at Wal-Mart.  (*See id.* ¶ 22; Ex. 21.)  In contrast, Wal-Mart's footwear is available only in Wal-Mart stores or via Wal-Mart's website at www.walmart.com.  As a result, a consumer will never encounter an adidas shoe and a Wal-Mart shoe offered for sale in the same retail location.  In addition, there is no evidence that Wal-Mart and adidas have advertised their striped footwear in the same channels, or that Wal-Mart prominently uses stripes in marketing its footwear. (*See id.* ¶ 23.)  Because the parties market and sell their footwear in different channels, this factor favors Wal-Mart.

### 6. Type of Goods and Degree of Care Likely to be Exercised by Purchaser

While it is generally assumed that consumers exercise greater care in purchasing goods when the goods are expensive, *see E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992), it stands to reason that consumers looking to purchase footwear will likely spend greater time and care in making their purchasing decision than consumers of similarly priced non-apparel items.  In fact, a typical potential purchaser of athletic shoes puts substantial thought into such a purchase, considering a variety of factors including but not limited to: (i) size and fit of the shoes; (ii) comfort of the shoes; (iii) design of the shoes; (iv) style of the shoes, including materials and color; and (v) activities for which the shoes are intended or designed.  Indeed, consumers typically examine and try on athletic footwear to test for such things as size, fit and comfort before purchasing.  The purchase of athletic footwear, though not necessarily high-cost goods, tends to involve a close and careful examination of products and their packaging by potential purchasers.  Because the purchase of athletic shoes is a more involved process than the cost of such goods might indicate, this factor mitigates against a finding that consumers will mistakenly believe that Wal-Mart's footwear is affiliated with or manufactured by adidas.

/ / /

### 7. Likelihood of Expansion of Product Lines

This factor considers whether the senior user of the trademark is likely to enter the market in which the junior user is operating. Because the parties already sell similar products, this factor is relatively unimportant. *See GoTo.com, Inc.* 202 F.3d at 1209 (declining to evaluate the likelihood of expansion of product lines given similarity of services provided by parties).

### 8. Defendant's Intent

adidas has put forth no evidence that Wal-Mart deliberately and intentionally copied adidas's trademark. (Hengl Decl. ¶ 17.) To the contrary, Wal-Mart has provided extensive evidence that it uses stripes in a purely ornamental fashion, that stripes are a commonly used design element on footwear and have been used in the industry for decades, and that several parties own trademark registrations for stripes on footwear. (*See id.* ¶¶ 12, 15-16; Exs. 11, 14, 15, 16.) Moreover, Wal-Mart has been selling footwear bearing two stripes for years. (*See id.* ¶ 8; Ex. 7.) In fact, when adidas brought suit against Wal-Mart in 2002[8], Wal-Mart was selling footwear bearing two parallel stripe designs to which adidas did not object. (*See id.*) Because adidas cannot prove that Wal-Mart has acted willfully and in bad faith, this factor favors Wal-Mart.

### 9. Weighing the Factors

The preceding analysis demonstrates that the *Sleekcraft* factors weigh heavily in favor of Wal-Mart.

### CONCLUSION

adidas can establish no triable issue of fact with respect to its claim that Wal-Mart's sale of footwear bearing two stripe designs is likely to cause confusion among consumers as to source. Here, Stride Rite owns exclusive federal rights to the Two-Stripe Mark and adidas

---

[8] The 2002 litigation involved claims of trademark infringement, trade dress infringement, and unfair competition arising from Wal-Mart's sale of a certain model of athletic footwear which purportedly resembled adidas's Superstar shoe model. (*See* Hengl Decl. ¶ 7 n.1.)

has no proprietary right to use or enforce a two stripe mark on footwear. Moreover, there is no evidence in the record that any consumer has been confused or deceived by Wal-Mart's use of any two stripe design and adidas has admitted that it is unaware of even a single instance of confusion, despite years of concurrent use and extensive sales by the parties. In the absence of such evidence, and for the reasons set forth above, Wal-Mart respectfully requests that the Court grant Wal-Mart's motion for summary judgment in its entirety.

DATED this 16th day of May, 2008.

TONKON TORP LLP

By: */s/ Daniel H. Skerritt*
**Daniel H. Skerritt**, OSB No. 68151
    Direct Dial:  (503) 802-2024
    Direct Fax:  (503) 972-3724
    E-mail:  dan@tonkon.com
**Ava L. Schoen**, OSB No. 04407
    Direct Dial:  (503) 802-2143
    Direct Fax:  (503) 972-3843
    E-mail:  avas@tonkon.com

**Russell H. Falconer**
**Melvin M. Wright, Jr.**
**Suzanne M. Hengl**
**Paul J. Reilly**
**BAKER BOTTS, L.L.P.**
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501

**Samuel Fifer**
**Terance A. Gonsalves**
**SONNENSCHEIN NATH & ROSENTHAL LLP**
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934

Attorneys for Defendant Wal-Mart Stores, Inc.

PAGE 14 -  DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

*(continued from page 1)*

**Samuel Fifer** (admitted *pro hac vice*)
    E-mail:    sfifer@sonnenschein.com
**Terance A. Gonsalves** (admitted *pro hac vice*)
    E-mail:    tgonsalves@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
233 S. Wacker Drive
Chicago, IL  60606
Telephone:    (312) 876-8000
Facsimile:    (312) 876-7934

    Attorneys for Defendant Wal-Mart Stores, Inc.

**Daniel H. Skerritt**, OSB No. 68151
    Direct Dial:    (503) 802-2024
    Direct Fax:    (503) 972-3724
    E-mail:    dan@tonkon.com
**Ava L. Schoen**, OSB No. 04407
    Direct Dial:    (503) 802-2143
    Direct Fax:    (503) 972-3843
    E-mail:    avas@tonkon.com
**TONKON TORP LLP**
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR  97204-2099

    Local Counsel for Defendant Wal-Mart Stores, Inc.